RECORD NUMBER: 14-4520

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

LAVANDUS HOUSTON,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

# OPENING BRIEF OF APPELLANT

DENZIL H. FORRESTER
DENZIL H. FORRESTER,
ATTORNEY AT LAW
3325 Washburn Avenue
Suite 103
Charlotte, NC 28205
T: (704) 632-9992
F: (704) 632-9969
denzilfesq@aol.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... ii

STATEMENT OF JURISDICTION ............................................................. 1

ISSUES PRESENTED FOR REVIEW ......................................................... 3

STATEMENT OF THE CASE ...................................................................... 3

SUMMARY OF ARGUMENT ................................................................... 7

ARGUMENT............................................................................................... 7

    I.  Defendant did not have constitutionally-close legal
        representation because neither one of his counsel was federal
        death-penalty qualified.................................................................. 7

            A.  Standard of Review ........................................................... 7

            B.  Discussion ......................................................................... 8

    II. The large disparity in length of imprisonment, between
        cooperating defendants, creates the appearance of an
        unreasonable sentence................................................................ 19

            A.  Standard of Review........................................................ 19

            B.  Discussion ....................................................................... 19

CONCLUSION ........................................................................................ 25

REQUEST FOR ORAL ARGUMENT ..................................................... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alabama v. Shelton*, 535 U.S. 654 (2002) ....................................................11

*Argersinger v. Hamlin*, 407 U.S. 25 (1972)...........................................10, 11

*Becton v. Barnett,* 920 F.2d 1190, 1192 (4th Cir. 1990)...............................7

*Gall v. United States*, 128 S. Ct. 586, 591(2007)........................................19

*Gideon v. Wainwright*, 372 U.S. 335 (1963) .........................................10, 14

*Glasser v. United States*, 315 U.S. 60 (1942) ..............................................14

*Hill v. Butterworth*, 941 F. Supp. 1129 (1996) ...........................................15

*Jackson v. United States*, 638 F. Supp. 2d 514 (2009)...........................12, 13

*Johnson v. Zerbst*, 304 U.S. 458 (1938) .......................................................11

*McMann v. Richardson*, 397 U.S. 759 (1970) ..............................................11

*Morris v. Slappy,* 461 U.S. 1 (1983).............................................................14

*Powell v. Alabama*, 287 U.S. 45 (1932) .......................................................14

*Robinson v. United States,* 144 F.2d 392 (6th Cir. 1944)..............................13

*Smith v. United States*, 360 U.S. 1 (1959) ....................................................13

*Strickland v. Washington*, 466 U.S. 668 (1984)............................................12

*United States v. Baldovinos*, 434 F.3d 233 (4th Cir. 2006).........................18

*United States v. Bergman*, 599 F.3d 1142 (10th Cir. 2010) .........................18

*United States v. Brown,* 202 F.3d 691 (4th Cir. 2000)...................................7

*United States v. Chandia*, 675 F.3d 329, 337 (4th Cir. 2012) ...................... 19

*United States v. Cobb*, 584 F.3d 979 (10th Cir. 2009) ................................... 21

*United States. v. Conn*, 657 F.3d 280 (5th Cir. 2011) .................................. 24

*United States v. Epps*, 707 F.3d 337 (D.C Cir. 2012) ................................. 21

*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) ................................. 15

*United States v. Fuller*, 941 F.2d 993 (9th Cir. 1991) .................................. 17

*United States v. Garcia-Oliveros*, 639 F.3d 380 (7th Cir. 2011) .................. 22

*United States v. Goins*, 355 Fed. Appx. 1 (6th Cir. 2009) ........................... 21

*United States v. Grier*, 475 F. 3d 556 (3d Cir. 2007) .................................. 15

*United States v. Guay*, 108 F.3d 545 (4th Cir. 1997) .................................. 8

*United States. v. Lewis,* 633 F.3d 262 (4th Cir. 2011) ................................ 24

*United States v. Moreland*, 568 F. Supp. 2d 674 (S.D.W. Va 2008) ........... 19

*United States v. Parker,* 103 F.2d 857(3rd Cir. 1939) ................................. 13

*United States v. Parrino*, 180 F.2d 613(2nd Cir. 1950) ............................... 13

*United States v. Panzardi-Allarez*, 816 F.2d 813 (1st Cir. 1987) ................ 17

*United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010) .......................... 19

*United States v. Seller*, 645 F.3d 830 (7th Cir. 2011) ................................. 14

*United States v. Singleton*, 107 F.3d 1091 (4th Cir. 1997) ........................... 7

*United States v. Thornsbury*, 670 F.3d 532 (4th Cir. 2012) ......................... 12

*United States v. Virgil*, 444 F.3d 447 (5th Cir. 2006) .................................. 17

*United States v. Williams*, 544 F.2d 1215 (4th Cir. 1976) ..........................16

*United States v. Witherspoon,* 231 F.3d 923 (4th Cir. 2000) .......................7

**STATUTES**

18 U.S.C. § 2 ......................................................................................4, 23

18 U.S.C. § 924(c)(1)...........................................................................3

18 U.S.C. § 924(c)(1)(A) ......................................................................4

18 U.S.C. § 924(j)(1) ............................................................................4

18 U.S.C. § 3005..........................................................................7, 9, 16

18 U.S.C. § 3231...................................................................................2

18 U.S.C. § 3553(a) .........................................................................7, 22

18 U.S.C. § 3553(a)(6)....................................................................21, 22

18 U.S.C. § 3582(c)(2).........................................................................21

18 U.S.C. § 3599(a) .............................................................................9

18 U.S.C. § 3742(a) .............................................................................2

21 U.S.C. § 841(b)(1)(B) ...................................................................1, 3

21 U.S.C. § 846 ................................................................................1, 3

28 U.S.C. § 1291..................................................................................2

28 U.S.C. § 2261...........................................................................14, 15

28 U.S.C. § 2266...........................................................................14, 15

**GUIDELINES**

U.S.S.G. § 5A ...............................................................................5

**RULES**

F. R. A. P. 4(b)(1)(A)..............................................................2, 5

Fed R. Crim. P. 11(c)(1)(C) ...............................................2, 4, 21

Fed R. Crim. P. 11(c)(5) ...........................................................24

**ACTS**

Effective Death Penalty Act of 1996 (AEDPA) ...........................14

**BOOKS**

Guide to Judiciary Policies and Procedures App. 1-1 (1999).......................15

## STATEMENT OF JURISDICTION

On December 14, 2011, a two count Bill of Indictment was filed against Lavandus Houston, Jacorian Small, Christopher Hammond, Lace Cutler, Kimberly James and Covache Ratliff in the Western District of North Carolina, Charlotte Division. Count One of the Bill of Indictment charged the defendants with Conspiracy to Possess With the Intent to Distribute cocaine a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(b)(1)(B) and 846. The Bill of Indictment lists the violations as occurring from on or about August 2009, to on or about December 14, 2011, in Mecklenburg County, North Carolina, within the Western District of North Carolina. Count Two occurred on or about November 28, 2009, in Mecklenburg County, within the western district of North Carolina.

On February 28, 2012, Mr. Houston appeared before United States Magistrate Judge David S. Cayer, in Charlotte, Mecklenburg County, North Carolina, for his initial appearance. On March 1, 2012, counsel was appointed for Mr. Houston pursuant to Criminal Justice Act (CJA) Form 30. (JA 9.4) On March 7, 2012, additional counsel was appointed for Mr. Houston, because of the possibility of the death penalty. (JA 9.7) Neither counsel qualified for the death penalty panel at the federal court or state court level. However, death penalty qualified attorneys were appointed to represent codefendants pursuant to CJA

1

Form 20.  (JA 2, 6 & 9.6)  On January 31, 2012, counsel for Kimberly James was appointed pursuant to CJA Form 20. (JA 9.2)  On January 25, 2012, counsel for Covache Ratliff was appointed pursuant to Form CJA 20.  (JA 9.1)  On February 29, 2012, counsel for Lace Cutler was appointed pursuant to Form CJA 20. (JA 9.4 & 9.6)  Cutler, James and Ratliff accepted and entered pleas of guilty on or before May 31, 2012.

On December 12, 2012, a Superseding Bill of Indictment was filed against Lavandus Houston, Jacorian Small and Christopher Hammond.  The jurisdiction remained in the Western District of North Carolina at Charlotte.

On February 1, 2013, the written plea agreement signed by the parties was filed in district court.  On February 4, 2013, Mr. Houston appeared before Magistrate Judge David Keesler and entered a plea of guilty to Count One pursuant to Rule 11(c)(1)(C).  The district court entered judgment on May 5, 2014.  On June 18, 2014, an amended judgment was filed by the district court.  The Notice of Appeal was filed on July 2, 2014.  Criminal defendants are allowed fourteen calendar days after the entry of judgment to appeal pursuant to the Federal Rules of Appellate Procedure, 4(b)(1)(A).  Mr. Houston's Notice of Appeal was filed in a timely manner.  The district court has jurisdiction pursuant to 18 U.S.C. § 3231. This Court's jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

2

## ISSUES PRESENTED FOR REVIEW

I.     Defendant did not have constitutionally-close legal representation because neither one of his counsel was federal death-penalty qualified.

II.    The large disparity in length of imprisonment, between cooperating defendants, creates the appearance of an unreasonable sentence.

## STATEMENT OF THE CASE

This case originated from a Bill of Indictment filed in the Western District of North Carolina at the Charlotte Division, on December 14, 2011. (JA 10) Lavandus Houston, Jacorian Small, Christopher Hammond, Lace Cutler, Kimberly James and Covache Ratliff were named in Count one of the Bill of Indictment.  In the two count Bill of Indictment, Lavandus Houston was charged in Count One with, Conspiracy to Possess With Intent to Distribute a controlled substance, [powder] cocaine, in violation of Title 21 U.S.C. §§ 841(b)(1)(B) and 846. (JA 10)

The allegations in Count Two occurred on or about November 28, 2009, in Mecklenburg County, within the western district of North Carolina.  The charging document states Lavandus Houston, Jacorian Small and Christopher Hammond, aided and abetted each other during and in relation to a drug trafficking crime; they unlawfully possessed, used and carried a firearm in furtherance of a drug trafficking crime, said firearm was possessed in violation of 18 U.S.C. § 924(c)(1); said violation caused the death of a person, specifically, Luis Miguel Catalan, in

3

violation of Title 18 U.S.C §§924(c)(1)(A) and 2.

On December 12, 2012, a Superseding Bill of Indictment was filed against Lavandus Houston, Jacorian Small and Christopher Hammond. (JA 25)   The beginning date of the conspiracy expanded from August 2009, in the original charging document to, from on or about January 2006, in the Superseding Bill of Indictment.  The ending date in the revised charging document remained at, on or about December 14, 2011, in Mecklenburg County.  The controlled substance in Count One was revised to cocaine base.  Count Two was now in violation of Title 18 U.S.C §§924(c)(1)(A), 924(j)(1) and 2.  On December 20, 2012, Mr. Houston was arraigned on the Superseding Bill of Indictment.  On January 16, 2013, a motion for Inquiry of Counsel was filed.

On February 1, 2013, a written plea agreement signed by the parties was filed in the district court. (JA 104-110).  On February 4, 2013, Mr. Houston appeared before Magistrate Judge David Keesler and entered a plea of guilty to Count One pursuant to Rule 11(c)(1)(C).

Other codefendants signed their separate pleas in 2012.  Covache Ratliff signed a plea agreement on or about April 18, 20012.  Lace Cutler signed a plea agreement on or about May 10, 20012.  Kimberly James signed a plea agreement on or about May 10, 20012.

On January 2, 2014, Houston's draft Presentence Report (PSR) was

4

published.  (JA 7)  In the PSR, codefendant, Christopher Hammond, indicated Charles Edward Toney a/k/a "CJ" shot the decedent, Luis Miguel Catalan. (JA 115, 119, 120)  Hammond stated, Houston asked CJ why he, CJ, did the shooting. CJ replied Catalan had a gun. (JA 122)  A confidential source advised agents that Jacorian Small, a friend of Houston was known to carry a gun, a .357 revolver. (JA 117)  Houston had never carried a gun.  (JA 117).  Small cooperated and blamed the shooting on Houston.  (JA 120)  CJ cooperated and blamed the shooting on Houston.  (JA 119).  Houston cooperated and received a higher sentence than a majority of the other cooperators. (JA 9.17, 9.19).

Pursuant to U.S.S.G. Chapter 5, Part A, based upon a total offense level of 35 and a criminal history category of V, the guideline range for imprisonment is 262 months to 327 months.  Houston received a guideline range sentence of 210 months imprisonment. (JA 95)  The district court pronounced a four-year term of Supervised Release.

The district court entered judgment on May 5, 2014.  On June 18, 2014, an amended judgment was filed by the district court.  The Statement of Reasons was filed on May 15, 2014.  On July 2, 2014, a Notice of Appeal was filed. Criminal defendants are allowed fourteen calendar days after the entry of judgment to appeal pursuant to the Federal Rules of Appellate Procedure, 4(b)(1)(A).  Mr. Houston's Notice of Appeal was filed in a timely manner.

Defendant Lavandus Houston was represented by Messrs. Daniel Baker McIntyre III and James Stephens Weidner Jr., at the trial level. Mr. Weidner was not a death penalty-qualified attorney at any point during the relevant proceedings. Mr. McIntyre was not a death-penalty qualified attorney at any point during the relevant proceedings. Neither attorney had any current significant state court criminal practice. The first paragraph of the PSR states the "Superseding Indictment charges the defendant with Conspiracy To Distribute Cocaine and Cocaine Base (Count 1), Use, Carry and Possess a Firearm During and In Relation To a Drug Trafficking Crime and Causing The Death of a Person through Use of the Firearm and Aid and Abet The Same (Count 2)." (JA 114)

Form CJA 30 is used for the appointment and compensation of court-appointed counsel for capital proceedings. Both lawyers for Houston were appointed using Form CJA 30. (JA 4) On December 14, 2011, the Bill of Indictment was filed against Houston. On January 23, 2013, defense counsel, Attorney Weidner, addressed the magistrate court with Assistant United States Attorney, Guise present and stated "it's technically a capital case." The assertion went uncontroverted. (JA 32) Mr. Houston referenced, his life was on the line. (JA 34)

## SUMMARY OF ARGUMENT

Appellant contends pursuant to law, Title 18 U.S.C. § 3005, his attorneys were not qualified to represent him in a capital offense.  Therefore, appellant need not show their performance fell below any legal standard, to successfully demonstrate he was without counsel at the trial level.

The district court failed to ensure the tenets of Title 18 U.S.C.  §3553(a) which led to a gross sentencing disparity that prejudiced appellant.

## ARGUMENT

**I.  Defendant did not have constitutionally-close legal representation because neither one of his counsel was federal death-penalty qualified**.

A. <u>Standard of Review</u>

Ineffective assistance of counsel:

Whether specific facts constitute ineffective assistance of counsel is decided de novo. *United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000); Becton v. Barnett, 920 F.2d 1190, 1192(4th Cir. 1990)*.

Waiver of Right to Counsel:

Review of defendant's right to counsel is de novo.  *United States v. Singleton*, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997); *United States v. Brown* 202 F.3d 691 (4th Cir. 2000).  The district court's determination of whether the defendant knowingly, intelligently, and voluntarily waived her Fifth and Sixth

7

Amendment rights is reviewed de novo. *United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997).

B.      Discussion

### Federal Capital Prosecutions

The Criminal Justice Act allows appointment of counsel to indigent defendants at no cost to the defendant.  The record demonstrates Houston qualified for appointment of counsel based on his indigence.  (JA 4, 21)

(1)      The record demonstrates the:  District Court; Department of Justice; Federal Clerk of Court; and the community Defender's Office, knew this matter involved a capital offense.  (JA 3-4, 15)

(2)      The first paragraph of the PSR states the defendant was convicted of a crime which caused the death of a person. (JA 114)

(3)      Both lawyers were appointed using Form CJA 30, which denotes assigned counsel in capital cases. (JA 4)

(4)      Attorney Weidner addressed the Magistrate Court with defendant and Assistant United States Attorney Guise present.  He stated "it's technically a capital case." (JA 32).

(5)      Mr. Houston referenced a belief that his life was on the line, multiple times.  (JA 34)

8

(6)      The Magistrate Court stated defendant possessed a firearm to kill

Luis Miguel Catalan. (JA 15)

According to the record, this was a capital case. Houston believed he was charged with a capital offense. Pursuant to 18 U.S.C. § 3005, a person charged with a federal capital offense is entitled to the appointment of two attorneys. One of the defendant's counsels shall be learned in the law applicable to capital cases. Pursuant to 18 U.S.C. § 3599(a), if necessary for adequate representation, more than two attorneys may be appointed to represent a defendant in such a case. Actions taken on the record is a tell-tale revelation of the district court's and prosecutor's read that Houston was facing a possibility sentence of death. Two attorneys were appointed in this matter. The appointment was pursuant to Form CJA 30. However, they did not go far enough to protect Houston's rights. No one assigned an attorney who was qualified to handle a capital offense, to represent Houston. That discrepancy falls back to the district court because counsel is appointed at its direction. The record demonstrates Attorney Elizabeth Anne Blackwood of the Federal Public Defender's Office, represented Mr. Houston at a hearing on February 28, 2012. (JA 13) Despite the multiple notices, Houston was not afforded qualified death-penalty attorneys.

9

On March 7, 2012, Attorney M. Victoria Jayne of the Office of Capital Defender was appointed to represent Lace Cutler. (JA 6 & 9.6)  On or about March 7, 2012, Attorneys Richard Eugene Beam, Jr., and Scott Gsell were appointed to represent Jacorian Small. (JA 2 & 9.6, 9.13).  Attorneys Jayne, Beam and Gsell all have experience trying murder cases at the state court level.   Attorneys Jayne and Beam are on the CJA death penalty panel.  Houston was not appointed an attorney from the CJA death penalty panel.  Appellant argues that this misfeasance violated his Sixth Amendment right to effective assistance of counsel in accordance with constitutional principles set forth in longstanding case law.  *Argersinger v. Hamlin*, 407 U.S. 25, 33 ( 1972).  This  seminal case requires provision of counsel in any offense that actually leads to imprisonment even for a brief period.  "The Sixth Amendment provides, "[I]n all criminal prosecutions, the accused shall enjoy the right.… to have the Assistance of Counsel for his [defense]."   We have construed this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived.  *Gideon v. Wainwright*, 372 U.S. 335, 339 (1963).  "[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty…The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not

'still be done." *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938) cited in *Argersinger* at 40.

Appellant contends without qualified death penalty lawyers he did not have assistance of counsel. The right to counsel encompasses the right to effective assistance of counsel. The special value of the right to assistance of counsel explains why "it has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

Houston was found to be indigent. Facing a felony indictment his situation begged for free legal assistance because he was facing imprisonment or worse. Therefore, he must have counsel. *Alabama v. Shelton*, 535 U.S. 654 (2002). In the Western District of North Carolina the district court does not routinely micromanage the appointment of legal counsel. Though the duty to select the individual attorney is often passed down to the magistrate court or to the federal clerk of court then outsourced to the federal community defender; the responsibility to select death penalty qualified attorneys cannot be delegated. Therefore, legal counsel was appointed for appellant at the direction of the district court, notwithstanding the circuitous route of matching lawyer with defendant. The process of appointment was repeated twice in this case because this matter involved allegations of a capital offense. Hence, there were multiple chances to

decipher the error. (JA 4, 15)

Houston believes the district court committed a structural error in not appointing at least one death penalty qualified attorneys to represent him at the trial court level. Houston contends his appeal waiver should be void because the record establishes the waiver is invalid due to the fundamental mistake. Additionally the issue being appealed is outside of the scope of the appellate waiver Houston signed. *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). Ineffective assistance of counsel is one exception to the waiver of appeal.

Appellant's argument on appeal does not concern the individual or collective specific performance of his lawyers at the trial level. Therefore, this matter does not call for the requisite showing of deficient performance by his counselors, which prejudiced the defendant. *Jackson v. United States*, 638 F. Supp. 2d 514 (2009); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80L.Ed. 2d 674 (1984). In *Jackson* the defendant, like Houston, was convicted of using a firearm during and in relation to a crime of violence; specifically, murder, in violation of 18 U.S.C.S. §§ 924(c), 924(j)(1). Therefore, this Court's focus should be limited to the qualification of the two appointed attorneys to defend a client in a capital offense. The *Jackson* case involved kidnapping and sexual abuse. This instant matter also involves aggravating factors, lighting a person's body on fire without knowledge of whether they were actually dead at the time. (JA 73)

12

In this matter, Houston proclaims his choice was to have death-penalty qualified attorneys to represent him. Houston argues, if there is a willful death the charge is sufficient to support a punishment of death. "It has been held by two Courts of Appeals that any indictment similar in terms to the charge here were sufficient to support capital punishments despite the absence of allegations that the kidnapping victims were released harmed. *United States v. Parrino*, 180 F.2d 613(2nd Cir. 1950); *Robinson v. United States,* 144 F.2d 392. (6th Cir. 1944). *United States v. Parker,* 103 F.2d 857(3rd Cir. 1939). Petitioner contends that these holdings dispose of his case because they make clear that the statute creates a single offense of kidnapping which *may* be punished by death if the prosecution, at trial, shows that the victim was released in a harmed condition." *Smith v. United States*, 360 U.S. 1 (1959). Houston's factual situation is exceedingly similar to the events in *Jackson*. Therefore, appellant had a reasonable basis for his anxiety regarding death upon conviction of the instant offense.

In his mind and the collective conscience of others this was a capital offense. (JA 3-4, 15, 32, 34, 114) Criminal defendants see the world through their own eyes. They tell on each other and they cheat each other. After all, this matter involves the breach of an arrangement to convey drugs. Houston felt whatever oral promise or deal the government and his defense attorneys had discussed regarding a life sentence or less, was capricious. Ultimately he believed death was a

13

possibility. The looming consequence of death was a negotiating influence in Houston's mind. Therefore, he should have had death-penalty qualified counselors advising him regarding his case. Because he did not, he lacked representation by counsel at trial.

Houston looks to the Seventh Circuit and declares the right to assistance of counsel, "is separate from the generalized due process right to a fair trial, and thus the deprivation of the right is complete when the defendant is erroneously denied counsel of choice. Such a denial constitutes a structural error and justifies reversal without inquiry into prejudice." *United States v. Seller*, 645 F.3d 830 (7th Cir. 2011); *Gideon; Glasser v. United States*, 315 U.S. 60 (1942) and *Powell v. Alabama*, 287 U.S. 45 (1932). In these cases counsel either was not provided or was prevented from discharging his or her normal functions and no showing of prejudice was required. *Morris v. Slappy* 461 U.S. 1, 26-27 (1983). Houston's counselors were prevented from discharging the normal function of a death-penalty qualified attorneys because they lacked the experience, certification and training. Therefore, Houston did not have effective assistance at trial; not because of what his lawyers did but because of the lack of qualification.

"It is crucial under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C.S. §§ 2261-2266, that only qualified attorneys be appointed to represent habeas petitioners in capital cases because the AEDPA does

not permit the ineffectiveness or incompetence of counsel during state or ... ... conviction proceedings is appointed for indigent capital defendants, it cannot qualify as an "opt-in" state under Chapter." *Hill v. Butterworth*, 941 F. Supp. 1129 (1996). Houston now requests the same constitutional protection as a person whose aim is to destroy this nation, the country Mr. Houston loves. Appellant argues the trigger for qualified counsel is not the act of terrorism; the trigger is the potential punishment of being sentenced to death. As such Houston should have been appointed proper counsel.

The federal statute at Sections 2261-2266 attempts to create respect in the system by incentivizing states to provided competent counsel to defendant because such lawyers are crucial to ensuring fairness and protecting the constitutional rights of capital litigants. The majority of capital cases are tried at the state court level. "Because violent felony offenses, particularly homicides, rarely are prosecuted in the federal courts, there is little opportunity for federal court practitioners to learn even the fundamentals relevant to the guilt phase defense of a federal death penalty case." *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) citing Guide to Judiciary Policies and Procedures App. 1-1 (1999) and *United States v. Grier*. 475 F. 3d 556, 556 (3d Cir. 2007).

Houston contends the two attorneys at best are dilettantes regarding North Carolina State criminal matters. They are not routinely seen engaged in felony

15

state criminal matters at the local county courthouse. As such there is no alternative argument this Court can examine regarding their qualification to advocate for a client in a federal death penalty case. Houston's trial attorneys lacked the knowledge and experience gained and retained from being around the daily cacophony of state criminal felony defense work.

Houston argues the Community Defender of the Western District of North Carolina and the District Judges of the jurisdiction have a list of death penalty qualified attorneys. Appellant believes the standard procedure of selecting counsel from said list was not fastidiously followed. Houston cites a case from this Court in support of his argument that the error here is structural. *United States v. Williams*, 544 F.2d 1215, 1218 (4th Cir. 1976). The case holds a failure to appoint second counsel, pursuant to §3005, "gives rise to an irrebuttable presumption of prejudice." Houston's situation is worse; he did not have one qualified counsel. At least those other appellants had one death penalty qualified attorney. Appointing qualified counsel would not have change the economics of the matter, because his case was billed at the higher Form CJA 30 rate not the Form CJA 20 rate. (JA 4) Hence, there was no rational reason for not selecting qualified attorneys to represent Houston.

The defendant was incompetent to waive the right because of his lack of knowledge, understanding and resources to check the qualifications of his

16

appointed counsel. Appointed counsel had an inherent conflict of interest because of the ostensible appearance of a self-serving interest to remain on the case. Despite having local rules and practices in place, they do not trump Houston's constitutional right to have the services of two qualified death penalty counsel. It was error to deny the defendant his right to counsel of his choice because of a local rule only permitting outside counsel to handle one case per year. *United States v. Panzardi-Allarez*, 816 F.2d 813 (1st Cir. 1987). Again Houston could have only made one competent choice. That choice would have been to request death penalty qualified counsel. Houston was never given a formal *Faretta* option or warning. It was error to take the defendant's guilty plea without the benefit of counsel. *United States v. Fuller*, 941 F.2d 993 (9th Cir. 1991). Hence, appellant was denied access to counsel without apt warning.

The court's failure to give *Faretta* warnings to ensure that the defendant's waiver of the right to counsel was knowing and intelligent, even at the sentencing stage, is so fundamentally violative of due process that the error is harmful *per se*. *United States v. Virgil*, 444 F.3d 447 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 365 (2006). *Faretta* warning deals with the court informing a defendant of the peril of representing himself. Here, the district court could have given Houston a modified A *Faretta* warning, concerning the perils of going forward with two attorneys who are not even on their own district's CJA death penalty panel. It would not have

17

been a perfect cure however; it would have provided cover to Appellee to make a specious appellate argument.

"The representation of the defendant at her competency hearing was *per se* ineffective and a violation of her Sixth Amendment right to assistance of counsel since the individual representing the defendant was not a lawyer." *United States v. Bergman*, 599 F.3d 1142 (10th Cir. 2010).   Houston going forward without qualified counsel was *de-facto*, *pro se* representation.   This Court may address a claim of ineffective assistance on direct appeal only if the lawyer's ineffectiveness conclusively appears on the record. *United States v. Baldovinos*, 434 F.3d 233, 239 (4th Cir. 2006).   The individuals representing Houston were not death penalty qualified counselors.   As such Houston was without counsel; he was acting *pro se*. The record demonstrates that Defendant Houston, as counsel for himself was without effective assistance of counsel.   Additionally, the appropriate procedure for waiver of counsel was not followed.   Therefore, the lack of counsel for Houston at the trial level, without warning, is a violation of the constitution. Appellant's conviction should be vacated.

# ARGUMENT

## II.    The large disparity in length of imprisonment, between cooperating defendants, creates the appearance of an unreasonable sentence.

### A.    Standard of Review

The Supreme Court in *Gall* described appellate court review as a "deferential abuse-of-discretion standard." *Gall*, 128 S.Ct. at 591.  It instruct[s] that when performing this review, the courts of appeals must look at the "totality of the circumstances, including the extent of any variance from the Guidelines range." Id, at 597.  Thus the Supreme Court determined that the courts of appeals should apply neither a proportionality test that requires extraordinary circumstances nor a numerical method that purports to attach values to each variable. Id, at 595-96. *United States v. Moreland*, 568 F. Supp. 2d 674 (S.D.W. Va 2008); *Gall v. United States*, 128 S.Ct. 586, 591(2007).  *United States v. Chandia*, 675 F.3d 329,337 (4th Cir. 2012) citing: *United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010).

### B.    Discussion

Houston contends there were convoluted issues at the trial court level.  He was a cooperating defendant.   Additionally, a codefendant Hammond stated, Houston was not the trigger person, yet his sentence reflects that of a person who had not cooperated to a substantial degree. ( JA 122 )  These above statements demonstrate what is perplexing about Houston's sentence.

19

The Government gave Houston a modest reduction. It was not a large reduction. (JA 82) Cutler, James and Ratliff received less than four years imprisonment. (JA 9.17, 82) To be frank Covache Ratliff received time served. (JA 9.17)

Codefendant Christopher Hammond had no reason to fabricate the statements. (JA 115,119,120 & 122) The fact that Hammond, Houston and Catalan, had previously participated in small drug deals was not a secret. (JA 118) Hammond's version of events, places the gun in CJ's hand. (JA 122) Hammond told agents CJ pulled out a silver revolver and pointed the gun at Catalan. (JA 121) CJ lit a cigarette and threw it into Catalan's car after pouring gasoline in or on the vehicle. Hammond reported that immediately after the incident Houston asked CJ why he did the shooting. The assertions by Hammond regarding Houston's role was accepted by the district court as part of the factual basis surrounding appellant's plea of guilty. A confidential source reported Houston was not known to carry a gun. (JA 117) The above demonstrates Houston lacked the requisite knowledge or intent during the incident to qualify for imprisonment over four years. (JA121) Houston was sentenced to over 210 months. The wide gap in terms of imprisonment creates an intolerable sentencing disparity.

20

## **Intolerable Sentencing Disparity**

Houston cooperated and was treated unfairly with regards to sentencing reduction, which is contrary to Section's 3553(a)(6) prohibition against disparity in sentencing. The United States Supreme court held that a district court is not categorically barred from reducing a defendant's sentence under 18 U.S.C. § 3582(c)(2) where a defendant entered into a plea agreement pursuant to Fed. R. crim. P. 11(c)(1) (C). *United States v. Epps*, 707 F.3d 337 (D.C Cir. 2012). Houston finds this case instructive. He believes his sentencing court was inflexible and should have been guided by the Title18 U.S.C. §3553(a) (6)principles.

A sister circuit found the time of pleading to a Fed R. Crim. P 11(c)(1)(C) should not bar a defendant from reaping the benefit of a Sentencing Guidelines amendment regarding the disparity in the treatment of crack and powder cocaine . *United States v. Goins*, 355 Fed. Appx. 1 (6th Cir. 2009). Houston argues, although a Rule 11(c)(1)(C ) sentence arrangement is an agreement between the government and the defendant, it is not ….simply a matter of contract; *Goins* citing *United States v. Cobb*, 584 F.3d 979 (10th Cir. 2009). The above cases sought to avoid perpetuating the very disparity recent changes including 18 U.S.C. §3553(a) meant to correct. As it relates to this matter, Houston's sentencing court was cognizant of the meager reduction appellant received for his cooperation. Notwithstanding the recognition of the paltry reduction to appellant, the district court did not cure the

21

intolerable disparity. Hence this matter is ripe for this Court to address the judicial error. Otherwise it appears that the time of pleading, pre or post superseding bill of indictment, was the operative factor in terms of imprisonment. After all, Cutler, James and Ratliff were guilty of the same entitled substantive offenses, in Count One, as Houston.

"A sentencing court commits procedural error by not adequately explaining its choice of sentence." *United States v. Garcia-Oliveros*, 639 F.3d 380 (7th Cir. 2011). The district court should have stated more to justify the disparity between zero years of imprisonment following the sentencing hearing for Ratliff, when giving an additional 15 years in custody to Houston. This is even with a 11(c)(1)(C )plea. According to case law the Section 3553(a) factors are reign predominant over the type of plea. Hammond's statements support the position that Houston did not have prior knowledge of the intent to murder. Therefore, the huge disparity between cooperating defendants who did not know of the intent to murder is contrary to §3553(a) (6) admonition against disparity in sentencing. Houston should have been sentence in the range of Cutler and James.

Houston explains the charges remained the same in the Superseding Bill of Indictment. (JA 10, 25) The approximate end date of the conspiracy, on or about December 14, 2011, remained the same. (JA 10, 25) Arguably, Houston is a person like Cutler, James and Ratliff because they all did not know the vile

22

intentions of the shooter. Yet, Houston was treated markedly worse at his sentencing hearing.

The Government is taking unfair advantage of the term conspiracy. Pursuant to 18 U.S.C. § 2, all are just as guilty in a conspiracy. The notoriety of this matter is because of the death of a human being. All six defendants: Houston; Small; Hammond; Cutler; James and Ratliff were charged in Count One. Count One is the count Houston was convicted of committing. Information from the PSR indicates Houston had the same low propensity to possess the murder weapon as Cutler, James or Ratliff. As such it begs the argument that Lace Cutler, Kimberly James and Covache Ratliff benefited by way of an enormous reduction in punishment for their involvement, due to the timing of their pleas. Houston contends because of the different plea agreements the disproportionate time-cut is not directly charged to the district court. However, appellant does point out the sentencing court did endorse the disparate reductions, by pronouncing varied sentences with cases having the same common denominator, lack of foreknowledge to CJ's intent. The length of the other individual sentences juxtaposed to Houston's is intolerably. The arbiter having knowledge of the different sealed plea agreements is the sentencing judge.

An unreasonable opposing position is that Cutler, James and Ratliff knew of the drugs but not of the death. That notion is debunked because others not charged

23

in the conspiracy knew of the death, namely CJ. No one explained the reason for the differential treatment of Houston. Therefore, appellant posits he received the detriment of the disparate sentences. As such he requests this Court to vacate his conviction and sentence. The district court pronounced a disparate sentence after discussing the meager reward for Houston's cooperation. The sentencing court was required pursuant to Rule 11(c)(5) to allow Houston the opportunity to withdraw his guilty plea. *United States. v. Lewis,* 633 F.3d 262 (4th Cir. 2011). That did not occur in this matter.

By adverse inference, Houston, Lace Cutler, Kimberly James and Covache Ratliff are similarly-situated defendants; due to the count of conviction. Houston contends he did not get a managerial role in the conspiracy. Therefore, they were all equal with regards to the drug conviction. The fifth Circuit recognizes the seamless unity of defendants when neither is considered manager over the other. *United States. v. Conn*, 657 F.3d 280 (5th Cir. 2011). Houston is supported by the PSR. The document did not make a clear line of demarcation between managers and underlings. Houston argues in the alternative, for Appellee to now find a difference between Houston, Cutler, James and Ratliff, any point of distinction would support the argument that this matter is a capital case, not a drug conviction. For those at the murder scene received the lion's share of punishment.

24

## CONCLUSION

For the reasons set forth above, the undersigned respectfully prays this Court will vacate his conviction and sentence.

## REQUEST FOR ORAL ARGUMENT

The appellant respectfully requests oral argument as he believes it would be beneficial to the court in the decision making process.

Respectfully Submitted,


*/s/Denzil H. Forrester*
N.C. State Bar No. 24976
Attorney for Defendant
Denzil H. Forrester Attorney-at-Law
3325 Washburn Avenue, Suite 103
Charlotte, NC 28205
(704) 632-9992-v
(704) 632-9969-fax
denzilfesq@aol.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>14-4520</u>    **Caption:** <u>U.S. v. Lavandus Houston</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓] this brief contains _____5,464_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓] this brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word 2010</u> [*identify word processing program*] in
<u>14 Point, Times New Roman</u> [*identify font size and type style*]; **or**

[ ] this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) <u>Denzil H. Forrester</u>

Attorney for <u>Appellant</u>

Dated: <u>11/12/2014</u>

# CERTIFICATE OF SERVICE

I certify that on <u>11/12/2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

AMY ELIZABETH RAY
OFFICE OF THE U.S. ATTORNEY
United States Courthouse
100 Otis Street
Room 233
Asheville, NC  28801
T: (828) 271-4661
F: (828)271-4670
amy.ray.usdoj.gov

/s/ Denzil H. Forrester
_____
Signature

11/12/2014
_____
Date